UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JEROME ANTHONY BANKSTON,

                 Petitioner,

v.

MICHAEL BURGESS,

                 Respondent.

_____/

Case No. 1:23-cv-529

Honorable Robert J. Jonker

## **OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (discussing that a district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

## Discussion

### I.      Factual allegations

Petitioner Jerome Anthony Bankston is incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. Following a multi-day jury trial in the Macomb County Circuit Court, Petitioner was convicted of one count of assault with intent to commit murder, in violation of Mich. Comp. Laws § 750.83; one count of receiving and concealing stolen property-motor vehicle, in violation of Mich. Comp. Laws § 750.535(7); one count of armed robbery, in violation of Mich. Comp. Laws § 750.529; and two counts of use of a firearm during the commission of a felony (felony-firearm). Petitioner was also convicted of one count of being a felon in possession of a weapon (felon-in-possession), in violation of Mich. Comp. Laws § 750.224f, and another count of felony-firearm associated with the felon-in-possession felony. Those charges were tried to the bench at Petitioner's request.

On January 21, 2020, the court sentenced Petitioner as a third habitual offender, Mich. Comp. Laws § 769.11, to concurrent prison terms of 28 to 60 years for assault with intent to commit murder, 12 to 30 years for armed robbery, and 5 to 10 years for felon-in-possession and for receiving and concealing stolen property. Those concurrent sentences were to be served consecutively to concurrent sentences of 2 years for each of Petitioner's felony-firearm convictions. Considered together, Petitioner must serve a minimum of 30 years' imprisonment and a maximum of 62 years' imprisonment. *See* MDOC Offender Tracking Information System, https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=695070 (last visited August 8, 2023) (showing Petitioner's earliest release date as September 18, 2048, and his maximum discharge date as September 18, 2080).

2

The Michigan Court of Appeals described the facts underlying Petitioner's convictions as

follows:

> This case arises from an armed robbery of an armored-truck guard that took place outside of Bank of America in Clinton Township on August 28, 2014. The guard, Ryan Smith, testified that he was transporting money into the bank at around 1:00 p.m. when a man, later identified as Bernard Allen, approached him from behind with a silver revolver pointed at Smith. Smith allowed Allen to take the money, and after Allen started to run off with the money, Smith removed his gun from his holster and began firing at Allen, who returned fire. Smith testified that he eventually realized he was being shot at from two different directions—from Allen and from the front seat of a nearby silver minivan. Smith turned his attention and gunfire to the minivan, which quickly drove out of the parking lot. Allen was killed during the shootout. Although several bystanders witnessed the robbery, none of the witnesses were able to identify the driver of the minivan.

> Later that same day, the minivan was found abandoned a short distance from the bank. The ignition had been punched out, there was a screwdriver in the cup holder, several windows had been shot out, and there was blood on the steering wheel, driver's seat cushion, and the driver's side seatbelt latch or receiver. The police also discovered a revolver underneath a vest on the middle row of seating. The police had few leads on the identity of the driver until Detective James Hertel received an anonymous tip that the person police were looking for was defendant. The tipster further indicated that defendant had been shot in the robbery, "stitched up by a friend," and left town. Defendant was already known to have been in contact with Allen, and his cell phone records demonstrated that he was near Bank of America just before the robbery took place.

> The police were unable to locate defendant, and the investigation remained inactive for several years until, in 2018, a local Combined DNA Index System database administrator got a case-to-case match between the DNA profile from the blood found in the minivan and a profile entered by the New Orleans Police Department. Defendant was eventually located in Louisiana, arrested, and transported to Michigan for trial in this case. Defendant's DNA was analyzed, compared to the blood samples from 2014, and confirmed to be a match. The prosecution also presented evidence that defendant had what appeared to be a bullet wound scar in a location consistent with the trajectory of one of the bullets that struck the minivan.

*People v. Bankston*, No. 352604, 2021 WL 3236330, at *1–2 (Mich. Ct. App. Jul. 29, 2021). "The

facts as recited by the Michigan Court of Appeals are presumed correct on habeas review pursuant

to 28 U.S.C. § 2254(e)(1)." *Shimel v. Warren*, 838 F.3d 685, 688 (6th Cir. 2016) (footnote omitted).

The Court notes further that the "Statement of Facts" section in Petitioner's brief reproduces, word

3

for word, the entirety of the court of appeals' factual recitation. (Pet'r's Br., ECF No. 2, PageID.22–23.)

Petitioner, with the assistance of counsel, directly appealed his convictions and sentences to the Michigan Court of Appeals raising the same three issues he raises in the instant petition. (Pet., ECF No. 1, PageID.2); *Bankston*, 2021 WL 3233660, at *2–5. The court of appeals affirmed the trial court's judgment on July 29, 2021.

Petitioner then filed a *pro per* application for leave to appeal to the Michigan Supreme Court, again raising the same three issues. (Pet., ECF No. 1, PageID.3.) The Michigan Supreme Court denied leave initially on March 8, 2022, *People v. Bankston*, 970 N.W.2d 343 (Mich. 2022), and upon reconsideration on May 31, 2022, *People v. Bankston*, 974 N.W.2d 201 (Mich. 2022). Petitioner did not file a petition for writ of certiorari in the United States Supreme Court, (Pet., ECF No. 1, PageID.3); instead, on May 13, 2023, Petitioner filed his habeas corpus petition and supporting brief.

The petition raises three grounds for relief, as follows:

I.    There was no evidence to establish that appellant knew the firearm was in the vehicle-and the proofs actually showed that the weapon was not visible[.] The prosecution's evidence was insufficient to prove beyond a reasonable doubt that appellant possessed it.

II.   Admission of the anonymous tipster's tip identifying Mr. Bankston as a perpetrator was erroneously admitted in violation of MRE 802, MRE 403, and Mr. Bankston's Sixth Amendment right of confrontation.

III.  Mr. Bankston was improperly sentenced as a third habitual offender where the enhancement was based, in part, on a one[-]year maximum offense, and defense counsel provided ineffective assistance of counsel.

(Pet., ECF No. 1, PageID.5–7.)

## II.    AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation marks omitted). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record

that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III.   Discussion

### A.   Sufficiency of the Evidence

Petitioner presents a novel sufficiency of the evidence question with regard to his conviction for being a felon in possession of a firearm. In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court announced the following standard for resolving sufficiency claims: the court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319. The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*. Witness credibility remains the province of the jury, *see Herrera v. Collins*, 506 U.S. 390, 401–02 (1993), and an attack on witness credibility constitutes a challenge to the quality, but not the sufficiency of the government's evidence. *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002). The habeas court need only examine the evidence

supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196–97 (6th Cir. 1988).

Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). This standard erects "a nearly insurmountable hurdle" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis*, 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

The Michigan Court of Appeals applied the following standard to resolve Petitioner's sufficiency challenge:

> "Evidence is sufficient if, when viewed in the light most favorable to the prosecution, a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *Id.* (quotation marks and citation omitted). In reviewing the sufficiency of the evidence, this Court must draw reasonable inferences and assess witness credibility in favor of the verdict. *People v Nowack*, 462 Mich. 392, 400; 614 N.W.2d 78 (2000). "Circumstantial evidence and reasonable inferences arising therefrom may constitute proof of the elements of [a] crime." *People v Savage*, 327 Mich. App. 604, 613; 935 N.W.2d 69 (2019) (quotation marks and citation omitted; alteration in original).

*Bankston*, 2021 WL 3236330, at \*2. Although the court of appeals cited state authority, *Nowack*, as the source of the standard, the *Nowack* court derived the standard from *Jackson*. *Nowack*, 614 N.W.2d at 81.

The state court's application of the correct standard eliminates the possibility that the resulting decision is "contrary to" clearly established federal law. As the Supreme Court stated in *Williams v. Taylor*:

The word "contrary" is commonly understood to mean "diametrically different," "opposite in character or nature," or "mutually opposed." Webster's Third New International Dictionary 495 (1976). The text of § 2254(d)(1) therefore suggests that the state court's decision must be substantially different from the relevant precedent of this Court. The Fourth Circuit's interpretation of the "contrary to" clause accurately reflects this textual meaning. A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases.

*Williams*, 529 U.S. at 405. The Court went on to offer, as an example of something that is not

"contrary to" clearly established federal law, the following:

[A] run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s "contrary to" clause. Assume, for example, that a state-court decision on a prisoner's ineffective-assistance claim correctly identifies *Strickland* [*v. Washington*, 466 U.S. 668 (1984),] as the controlling legal authority and, applying that framework, rejects the prisoner's claim. Quite clearly, the state-court decision would be in accord with our decision in *Strickland* as to the legal prerequisites for establishing an ineffective-assistance claim, even assuming the federal court considering the prisoner's habeas application might reach a different result applying the *Strickland* framework itself. It is difficult, however, to describe such a run-of-the-mill state-court decision as "diametrically different" from, "opposite in character or nature" from, or "mutually opposed" to *Strickland*, our clearly established precedent. Although the state-court decision may be contrary to the federal court's conception of how *Strickland* ought to be applied in that particular case, the decision is not "mutually opposed" to *Strickland* itself.

*Id.* at 406. Therefore, because the Michigan Court of Appeals applied the correct standard—here

*Jackson* rather than *Strickland*—Petitioner can only overcome the deference afforded state court

decisions if the determination of Petitioner's sufficiency is an unreasonable application of *Jackson*

or if the state court's resolution was based on an unreasonable determination of the facts. 28 U.S.C.

2254(d).

The Michigan Court of Appeals applied the standard as follows:

Conviction of felon-in-possession under MCL 750.224f requires proof of two elements: "(1) the defendant is a felon who possessed a firearm (2) before his right to do so was formally restored under MCL 28.424." *People v Bass*, 317 Mich. App. 241, 268; 893 N.W.2d 140 (2016). "The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *Id.* at 268–269 (quotation marks and citation omitted). "Possession of a

firearm can be actual or constructive, joint or exclusive." *People v Johnson*, 293 Mich. App. 79, 83; 808 N.W.2d 815 (2011). "The test for constructive possession is whether the totality of the circumstances indicates a sufficient nexus between defendant and the contraband." *People v Minch*, 493 Mich 87, 91–92; 825 NW2d 560 (2012) (quotation marks and citation omitted). The defendant must knowingly have the power and intention to exercise dominion and control over the firearm. *Id*. at 92.

Directly after the robbery, Smith told the police that the driver of the minivan pointed a gun at him. Although he did not initially report that the driver shot at him, Smith was adamant at trial that he saw muzzle flashes coming from the front of the vehicle, which prompted him to return fire. Viewing this evidence in the light most favorable to the prosecution, a fact-finder could conclude beyond a reasonable doubt that the driver of the minivan had a firearm in his possession during the robbery. At trial, defendant's identity as the driver of the minivan was firmly established. When the abandoned minivan was located shortly after the robbery, there was blood on the driver's side of the vehicle with at least some of the blood appearing fresh. The blood samples that were analyzed by the Michigan State Police matched defendant's DNA profile, and defendant had a scar that was consistent with the trajectory of the bullet that passed through the passenger side head rest before striking the steering wheel. On the basis of the foregoing, the prosecution presented sufficient evidence to establish beyond a reasonable doubt that defendant possessed a firearm and was guilty of both felon-in-possession and felony-firearm.

*Bankston*, 2021 WL 3236330, at *2 (footnote omitted). The appellate court's analysis appears to faithfully track the requirements of *Jackson*. The court reviewed the elements that the prosecutor was required to prove and then looked at the evidence presented to see if there was a basis for a rational trier of fact to find that the essential elements were proven beyond a reasonable doubt. Indeed, Petitioner does not take issue with any aspect of the court of appeals' analysis. Instead he attacks the factual findings of the trial court. It is in that regard that Petitioner's sufficiency challenge is novel.

That which must be supported by sufficient evidence is the verdict. In a jury trial, there is really nothing else that might be supported—no intermediate steps that may or may not have enjoyed sufficient support. The same is not true in a bench trial. The Michigan Court Rules provide:

10

> When trial by jury has been waived, the court with jurisdiction must proceed with
> the trial. The court must find the facts specially, state separately its conclusions of
> law, and direct entry of the appropriate judgment. The court must state its findings
> and conclusions on the record or in a written opinion made a part of the record.

Mich. Ct. R. 6.403. Thus, it is theoretically possible to dig deeper into the sufficiency analysis
when a charge is tried to the bench. One could look to each finding of fact to determine whether
that finding of fact is supported by sufficient evidence.

But simply because a deeper inquiry is possible does not mean it is constitutionally
required. *Jackson* involved a sufficiency of the evidence review of a jury verdict, but the same
standard is applied to verdicts rendered in bench trials. *See United States v. Bashaw*, 982 F. 2d
168, 171 (6th Cir. 1992) (stating that "[e]ven when a defendant is convicted after a bench trial, the
test is 'whether the evidence is sufficient to justify the trial judge, as trier of facts, in concluding
beyond a reasonable doubt that the defendant was guilty'" (quoting *United States v. Niver*, 689
F.2d 520, 529 (5th Cir.1982))); *see also United States v. Pierce*, 224 F.3d 158, 164 (2d Cir. 2000)
(stating that "[w]hen reviewing a claim of insufficiency of the evidence, 'the standard of review is
exactly the same regardless whether the verdict was rendered by a jury or by a judge after a bench
trial'" (quoting *McCarthy v. New York City Tech. College of City Univ. of New York*, 202 F.3d
161, 166 (2d Cir. 2000))).

The difference between evaluating the sufficiency of the evidence to support the trial
court's findings versus the sufficiency of the evidence to support the verdict might be significant.
It appears the trial court considered whether Petitioner had possessed the gun that was found under
the vest on the van's seat. Petitioner reports the trial court's findings as follows:

> Based on testimony that the blood in the van was the defendant's, immediately
> after, it appears some of the blood was still wet and fresh, the defendant did have a
> 2008 felonious assault conviction, there was a gun discovered on the seat of that
> van, when the yellow vest was lifted up, the gun was there, that's all, I think, enough
> to show that the defendant was, in fact, in possession of that firearm. So I find the
> defendant guilty on Count VI and VII.

(Pet'r's Br., ECF No. 2, PageID.26.) The court of appeals acknowledged that the gun on the seat was the focus of Petitioner's challenge, but noted "[w]hile the trial court mentioned this gun in its findings from the bench, whether defendant knew of this gun is not dispositive to whether there was sufficient evidence to support his bench-trial conviction for felon-in-possession—and the related felony-firearm conviction—based on the evidence discussed above." *Bankston*, 2021 WL 3236330, at *2 n.2.

The question before this Court on habeas review is whether the court of appeals' resolution of Petitioner's sufficiency challenge is an unreasonable application of *Jackson*. Although Petitioner claims that it is, the claim is conclusory. The Court's review indicates that the court of appeals did everything that *Jackson* requires. Accordingly, Petitioner is not entitled to habeas relief on his sufficiency claim.

Petitioner's underlying contention that the trial court clearly erred when the court determined Petitioner possessed the unfired gun, (Pet'r's Br., ECF No. 2, PageID.26–29), though potentially important as a matter of state law review,[1] is immaterial to federal habeas review because the state appellate court's determination that the requirements of *Jackson* were satisfied is not "based on" that purported "unreasonable determination of fact." 28 U.S.C. 2254(d)(1)(2).

---

[1] The Michigan courts, "[f]ollowing a bench trial, . . . review a trial court's findings of fact for clear error and a trial court's conclusions of law de novo" *People v. Jarrell*, __N.W.2d__, 2022 WL 17365039, at *3 (Mich. Ct. App. Dec. 1, 2022). If the state court erred in applying its own standard of review, it is purely a matter of state law. "[I]t is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). Thus, any part of the appellate court's determination rejecting Petitioner's claim that the trial court's finding is clearly erroneous would be axiomatically correct.

### B.      Confrontation Clause

Petitioner next contends that the testimony regarding the anonymous tip violated his constitutional right to confront the witnesses against him and that his counsel rendered ineffective assistance when counsel failed to object to the testimony. Petitioner also suggests that admission of the tip violated the Michigan Rules of Evidence regarding hearsay and the admission of unduly prejudicial evidence.

The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). As the Supreme Court explained in *Estelle*, 502 U.S. at 62, an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction . . . [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id*. at 67–68. Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id*. at 68. Thus, Petitioner's claim that the admission of the anonymous tip violated one or more of the Michigan Rules of Evidence, without more, is not cognizable on habeas review.

 "Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)); *see also Wilson v. Sheldon*, 874 F.3d 470, 475–76 (6th Cir. 2017). This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552 (6th Cir. 2000).

Further, under the AEDPA, the court may not grant relief if it would have decided the evidentiary question differently. The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court

on a question of law or if the state court decided the evidentiary issue differently than the Supreme

Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860

(6th Cir. 2000). Petitioner has not met this difficult standard.

Petitioner claims the trial court violated his fundamental right to confront the witnesses

against him. The Confrontation Clause of the Sixth Amendment gives the accused the right "to be

confronted with the witnesses against him." U.S. Const. amend. VI; *Pointer v. Texas*, 380 U.S.

400, 403–05 (1965) (applying the guarantee to the states through the Fourteenth Amendment).

"The central concern of the Confrontation Clause is to ensure the reliability of the evidence against

a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding

before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990). The Confrontation Clause

therefore prohibits the admission of an out-of-court testimonial statement at a criminal trial unless

the witness is unavailable to testify and the defendant had a prior opportunity for cross-

examination. *Crawford v. Washington*, 541 U.S. 36, 59 (2004).

Not every out-of-court statement introduced at trial will implicate the protections of the

Confrontation Clause.

> The text of the Confrontation Clause . . . applies to "witnesses" against the
> accused—in other words, those who "bear testimony." 2 N. Webster, An American
> Dictionary of the English Language (1828). "Testimony," in turn, is typically "[a]
> solemn declaration or affirmation made for the purpose of establishing or proving
> some fact." *Ibid.* An accuser who makes a formal statement to government officers
> bears testimony in a sense that a person who makes a casual remark to an
> acquaintance does not. The constitutional text, like the history underlying the
> common-law right of confrontation, thus reflects an especially acute concern with
> a specific type of out-of-court statement.

*Crawford,* 541 U.S. at 51. The *Crawford* Court had no need to decide whether the Confrontation

Clause had any application to nontestimonial statements, though the Court suggested in dicta that

the Clause did not apply to nontestimonial statements. In *Davis v. Washington*, 547 U.S, 813

14

(2006), the Supreme Court considered the question left open in *Crawford*, explicitly deciding that

the Confrontation Clause applied only to testimonial hearsay. *Id.* at 823–24.

The Michigan Court of Appeals resolved Petitioner's Confrontation Clause challenge as

follows:

> Testimony concerning anonymous tips can raise admissibility concerns under state evidentiary rules and the United States Constitution. First, hearsay—"a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted," MRE 801(c)—is generally inadmissible. MRE 802. Second, from a constitutional standpoint, "[t]he Confrontation Clause prohibits the admission of all out-of-court testimonial statements unless the declarant was unavailable at trial and the defendant had a prior opportunity for cross-examination." *People v Chambers*, 277 Mich. App. 1, 10; 742 N.W.2d 610 (2007).
>
> Defendant argues that Detective Hertel's testimony about receiving an anonymous tip was inadmissible for both of these reasons. But when an out-of-court statement is offered to prove something other than the truth of the matter asserted, it is neither hearsay nor barred by the Confrontation Clause. *People v Putman*, 309 Mich App 240, 246; 870 NW2d 593 (2015). Without objection by defense counsel, Detective Hertel described receiving a tip that defendant was involved in the robbery, shot, "stitched up by a friend," and left town. The prosecution asked Detective Hertel about how the tip affected the course of his investigation, prompting Detective Hertel to explain that the investigation then focused on defendant, whereas defendant had previously been only a person of interest because of his relationship with Allen. With their attention on defendant, the police were able to discover his phone number and obtain cell phone records demonstrating that defendant was in the vicinity of Bank of America moments before the robbery. Thus, while the prosecution's intentions for eliciting testimony about the anonymous tip were not discussed below, we can infer from the prosecution's subsequent questioning that the testimony was offered to prove why the investigation turned toward defendant. Such a purpose offends neither defendant's constitutional right to confront the witnesses against him nor the rule against hearsay. *Id.* Consequently, defendant has not established that a plain or obvious error occurred. *Wiley*, 324 Mich App at 150–151.

*Bankston*, 2021 WL 3236330, at *3.

The crux of the court of appeals' resolution of the issue is the following statement: "when

an out-of-court statement is offered to prove something other than the truth of the matter asserted,

it is neither hearsay nor barred by the Confrontation Clause." *Id.* That statement appears first in

*Crawford*, 541 U.S. at 59, n.9 ("The Clause also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."(citing *Tennessee v. Street*, 471 U.S. 409, 414 (1985))), and was relied upon by all nine justices in three of the four opinions offered by the divided Court in *Williams v. Illinois*, 567 U.S. 50, 70, 104, 125 (2012). Therefore, the court of appeals' analysis is not "contrary to" clearly established federal law. 28 U.S.C. § 2254(d)(1).

Nor is the appellate court's analysis an unreasonable application of clearly established federal law. In *Woods v. Etherton*, 578 U.S. 113 (2016), the Supreme Court squarely addressed how the Confrontation Clause applies to an investigating officer's recounting of an anonymous tip. The Court determined that "[a] 'fairminded jurist' could conclude that repetition of the tip did not establish that the uncontested facts it conveyed were submitted for their truth." *Id*. at 118. Thus, the Michigan appellate court's consideration of whether the tip was submitted for its truth would appear to be entirely consistent—or at least not inconsistent—with clearly established federal law. Certainly, Petitioner has not identified any cases the Supreme Court has decided differently on a set of materially indistinguishable facts.

Additionally, Sixth Circuit authority indicates that the line separating evidence that is offered to prove the truth of the matter asserted, on the one hand, from evidence that is not, on the other, is not always clear. That is particularly so where the purpose offered for admitting the evidence is to show the jury background information or the course of the investigation of the crime. Here, the court of appeals justified the recounting of the anonymous tip because it was not offered for the truth of the matter asserted, but to show how the police identified Petitioner as a suspect in the robbery investigation. Although Sixth Circuit authority is not clearly established federal law for purposes of 28 U.S.C. § 2254, it does highlight the problem posed by such evidence.

In *United States v. Nelson*, 725 F.3d 615 (6th Cir. 2013), and *United States v. Hearn*, 500 F.3d 479 (6th Cir. 2007) the court addressed whether evidence in the form of out-of-court informant statements was admitted for the truth of the matter asserted. In *Nelson*, the issue that came to the jury by way of out-of-court informant statements was that the defendant possessed a gun. There was no other evidence of that fact, other than circumstantial evidence. No police officer saw the defendant in possession of a gun. The court concluded that the "gun possession" detail of the informant's statement was not a necessary part of the "coherent narrative of the investigation" to prevent the jury from becoming "confused about why officers were targeting a particular individual." *Nelson*, 725 F.3d at 621. Similarly, in *Hearn*, the court concluded the out-of-court informant statements put before the jury regarding the defendant's intention to distribute ecstasy at a party went far beyond what was necessary to explain why police targeted the defendant and was introduced by the government intentionally for the purpose of establishing elements of the crime. *Hearn*, 500 F.3d at 483–84. In *United States v. Cromer*, 389 F.3d 662, 671–679 (6th Cir. 2004), the court concluded that some of the informant's statements fell into the category of background information—the address identified as a drug house—while others—specifically, statements identifying the defendant by his nickname and physical description as a dealer of cocaine—were used for the truth of the matter asserted.

In other cases, the Sixth Circuit has concluded the out-of-court statements were properly admitted. *See, e.g.*, *United States v. Reynolds*, 684 F. App'x 510, 515 (2017) ("The detective's statement at trial was not used by the government for its truth but rather as background information to explain how and why law enforcement was investigating defendant."); *United States v. Gibbs*, 506 F.3d 479, 486 (6th Cir. 2007) ("In some circumstances, out of court statements offered for the limited purpose of explaining why a government investigation was undertaken have been

17

determined not to be hearsay."); *United States v. Warman*, 578 F.3d 320, 346 (6th Cir. 2009) (citations omitted) ("[E]vidence that is 'provided merely by way of background' or is offered only to explain[] how certain events came to pass or why the officers took the actions they did,' is not offered for the truth of the matter asserted."); *United States v. Napier*, 787 F.3d 333, 348 (6th Cir. 2015) ("[The evidence] was offered for the limited purpose of showing the course of the agents' investigation . . . .").

In Petitioner's case, introduction of at least some of the information from the anonymous tipster was necessary to explain why police targeted Petitioner in their investigation of the robbery. It appears that the tipster's identification of Petitioner as the other participant in the robbery only mattered because of information turned up in the investigation that followed, i.e., information from Petitioner's cell phone regarding his location at the time of the robbery. And, ultimately, it was not the information from the tipster or the cell phone that resulted in locating Petitioner; it was the extremely inculpatory evidence of his DNA in the blood taken from the stolen van.

Nonetheless, there may well be an argument that the details of the anonymous tipster's report were considered by the jury for the truth of the matter asserted. But, that is not the standard for granting habeas relief. Absent more specific guidance from the Supreme Court or a clearer line between evidence that is admissible because it is not offered for the truth of the matter asserted and evidence that is not admissible, Petitioner has failed to show that the Michigan Court of Appeal's rejection of his Confrontation Clause argument is contrary to, or an unreasonable application of, clearly established federal law.

Moreover, for reasons of finality, comity, and federalism, habeas petitioners "are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *United States v. Lane*, 474

U.S. 438, 449 (1986)). Under this test, relief is proper only if the federal court has "grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict.'" *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995). There must be more than a "reasonable possibility" that the error was harmful. *Brecht*, 507 at 637 (internal quotation marks omitted). The *Brecht* standard reflects the view that a "State is not to be put to th[e] arduous task [of retrying a defendant] based on mere speculation that the defendant was prejudiced by trial error; the court must find that the defendant was actually prejudiced by the error." *Calderon v. Coleman*, 525 U.S. 141, 146 (1998) (per curiam). Petitioner cannot show prejudice because the information conveyed by the anonymous tip was, in the end, cumulative of information that naturally followed from the guard's testimony that he shot at the minivan, the presence of Petitioner's blood in the minivan, the fact that Petitioner had a scar—apparently from a bullet wound—in a location consistent with the guard's testimony, Petitioner's absence from the area at the time that the investigation focused on him, and the discovery of Petitioner in Louisiana.

To sum up, the Michigan Court of Appeals' analysis of Petitioner's Confrontation Clause claim is not contrary to clearly established federal law because the court of appeals followed the principles established by the Supreme Court in *Crawford*. Moreover, the court of appeals' determination is not an unreasonable application of clearly established federal law for a couple of reasons. First, the determination is consistent with the Supreme Court's approach in *Woods v. Etherton*. Second, whether or not an anonymous tip is offered for the truth of the matter asserted appears to depend on a range of factors. The Supreme Court has not offered definitive guidance. The Sixth Circuit Court of Appeals has resolved the question both ways, depending on the facts. As noted above, "where the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White*, 572 U.S. 415, 424 (2014) (internal

quotations omitted). Under those circumstances, this Court concludes that the state appellate court's decision is within the range of reasonable outcomes.

But, even if the anonymous tip was offered for the truth of the matter asserted, the Court concludes that the evidence that Petitioner's blood was in the van, that he was in the area at the time of the robbery, that he had a scar consistent with a bullet wound, and that the location of the scar was consistent with the victim's testimony regarding the shots he fired, are much more compelling evidence of Petitioner's participation than the anonymous tip; and, indeed, that evidence rendered the anonymous tip cumulative. Such cumulative evidence in that context renders any violation of Petitioner's Confrontation Clause rights harmless.

The statement of this issue in the petition is focused on error in the admission of the evidence. The statement of the issue in Petitioner's brief shifts that focus to counsel's failure to object to the evidence.

In *Strickland*, 466 U.S. at 668, the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's

actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen*, 563 U.S. at 190; *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740–41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . ." (citing *Harrington*, 562 U.S. at 102)).

The Michigan Court of Appeals applied the following standard when resolving Petitioner's "ineffective assistance" claim:

> A defendant who claims he or she was denied the effective assistance of counsel bears a heavy burden to overcome the presumption of effective assistance. *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018). "In order to obtain a new trial, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich. 38, 51; 826 N.W.2d 136 (2012). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Muhammad*, 326 Mich. App. 40, 63; 931 N.W.2d 20 (2018) (quotation marks and citation omitted).

*Bankston*, 2021 WL 3236330, at *4. Once again, although the court of appeals cited state authority for the relevant standard, that authority ultimately derives the standard from *Strickland*.

*Trakhtenberg*, 826 N.W.2d at 139, 143. Thus, Petitioner cannot prevail on a claim that the court of appeals' resolution is "contrary to" clearly established federal law. *Williams*, 529 U.S. at 405.

> The appellate court applied the standard as follows:
>
>> Defendant cannot establish that defense counsel's failure to object fell below an objective standard of reasonableness because the testimony was not inadmissible, and an attorney has no obligation to raise a meritless objection. *Savage*, 327 Mich. App. at 617. He is likewise unable to establish that he was prejudiced by defense counsel's performance. Again, defendant suggests that he was prejudiced by the testimony because it identified him as the driver, indicated that he was wounded, that his wound was treated by a friend, and that defendant left town afterward. Apart from the nature of medical attention defendant may have received (which has little if any relevance to the case), the jury could have drawn the same conclusions from other evidence. Defendant's ineffective assistance of counsel argument therefore fails. *Trakhtenberg*, 493 Mich. at 51.

*Bankston*, 2021 WL 3236330, at *4. That resolution is entirely consistent with *Strickland*. *See, e.g.*, *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) (stating "[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial").

Moreover, without regard to the merits of Petitioner's hearsay/Confrontation Clause claim, the determination that the admission of the anonymous tip was harmless forecloses a determination that the failure to object to the admission was prejudicial under *Strickland*. *See Kyles v. Whitley*, 514 U.S. 419, 436 (1995) (explaining that the *United States v. Agurs*, 427 U.S. 97 (1976) materiality standard, later adopted as the prejudice standard for ineffective assistance of counsel claims, requires the habeas petitioner to make a greater showing of harm than is necessary to overcome the harmless error test of *Brecht*); *see also Wright v. Burt*, 665 F. App'x 403, 410 (6th Cir. 2016) (stating that "our previous analysis of *Strickland* prejudice applies to the assessment of whether the Confrontation Clause violation was harmless error under *Brecht*."); *Bell v. Hurley*, 97 F. App'x 11, 17 (6th Cir. 2004) (stating that "[b]ecause we find the error to be harmless [under *Brecht*] Bell cannot meet the prejudice requirement of *Strickland* . . . ."); *Kelly v. McKee*, No. 16-1572, 2017 WL 2831019 at *8 (6th Cir. Jan. 24, 2017) (stating that "[b]ecause Kelly suffered

harmless error [under *Brecht*] at best, he cannot establish that he suffered prejudice [under *Strickland*]").

For all of these reasons, Petitioner has failed to show that he is entitled to habeas relief on his ineffective assistance of counsel claim.

### C.    Habitual Offender Sentencing Enhancement

Finally, Petitioner contends the Michigan court violated his due process rights by sentencing him based upon inaccurate information. Petitioner claims the court imposed an enhanced sentence because the court concluded Petitioner was a "third habitual offender" under Mich. Comp. Laws § 769.11 when, in fact, he was only a "second habitual offender under Mich. Comp. Laws § 769.10.

"[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Note to Rule 4, Rules Governing Habeas Corpus Cases). The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw*, 546 U.S. at 76; *Estelle*, 502 U.S. at 67–68; *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Claims concerning the improper application of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373–74 (1982) (holding that federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301–02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief).

By suggesting that the state court's error was relying upon "inaccurate information" rather than claiming that the state court wrongly applied state sentencing law, Petitioner attempts to make his sentencing claim cognizable on habeas review. A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Roberts v. United States*, 445 U.S. 552, 556 (1980); *see also United States v. Tucker*, 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948). To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447; *United States v. Stevens*, 851 F.2d 140, 143 (6th Cir. 1988); *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984). A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence. *Tucker*, 404 U.S. at 444, 447.

Petitioner claims his sentences are based on "inaccurate" information because the Court determined that one of his prior convictions could be counted as a felony when Petitioner contends it cannot be counted as a felony. The Michigan Court of Appeals concluded Petitioner was simply wrong:

> MCL 769.11 allows the trial court to enhance a defendant's sentence if the defendant "has been convicted of any combination of 2 or more felonies or attempts to commit felonies . . . ." What constitutes a felony for purposes of habitual offender enhancement is dictated by the Code of Criminal Procedure, MCL 760.1 *et seq*., *People v Smith*, 423 Mich. 427, 443–445; 378 N.W.2d 384 (1985), which defines the term "felony" as "a violation of a penal law of this state for which the offender, upon conviction, may be punished by imprisonment for more than 1 year or an offense expressly designated by law to be a felony," MCL 761.1(f).
>
> Defendant's claim of error stems from his 2011 conviction of attempted resisting and obstructing. Defendant argues that this conviction was a misdemeanor with a maximum possible sentence of one year in jail under MCL 750.92(3) and therefore could not be used to enhance his sentence under MCL 769.11. Assuming defendant's calculation of the potential term of incarceration is correct, defendant fails to appreciate that the habitual offender statute allows enhancement not only

24

on the basis of previous felony convictions, but also "attempts to commit felonies." MCL 769.11(1). The statutory language contains no requirement that the attempted felony must itself constitute a felony. *People v Slocum*, 156 Mich. App. 198, 200; 401 NW2d 271 (1986). Defendant attempted to commit resisting and obstructing— a "felony punishable by imprisonment for not more than 2 years . . . ." MCL 750.81d(1). Because defendant's 2011 conviction was for an attempt to commit a felony, it was properly considered for purposes of the third offense habitual offender statute, and defense counsel did not perform deficiently by failing to raise a meritless objection. *Savage*, 327 Mich. App. at 617.

*Bankston*, 2021 WL 3236330, at *5 (footnotes omitted).

Petitioner's characterization that the state court relied on an inaccurate fact is unfair. He does not identify any "fact" that the state court relied on that is either inaccurate or false. Indeed, he ignores the court of appeals' reasoning altogether. A fair characterization of the appellate court's decision would be that the crime of which Petitioner was convicted was a felony as a matter of state law. That determination binds this Court.

As the Supreme Court explained in *Estelle*, "it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67–68. The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright*, 464 U.S. at 84; *see also Bradshaw*, 546 U.S. at 76 (2005) (stating that "[w]e have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). Thus, the state court's determination regarding whether Petitioner's conviction "counted" as a felony under the statute is axiomatically correct.

Petitioner has failed to demonstrate that the state courts relied on inaccurate or false facts in determining his sentences. Accordingly, he has failed to show that the court of appeals' rejection of his sentencing claim is contrary to, or an unreasonable application of, clearly established federal law.

Moreover, as set forth above, "[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley*, 706 F.3d at 752 (6th Cir. 2013). Therefore, the Michigan Court of Appeals rejection of Petitioner's ineffective assistance claim is also entirely consistent with the clearly established federal law of *Strickland*. In short, Petitioner is not entitled to habeas relief.

## IV.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate

26

of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Conclusion

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.


Dated:   __August 17, 2023__         __/s/ Robert J. Jonker__
                                       Robert J. Jonker
                                       United States District Judge